## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CORINNE BUNETTO,

    Plaintiff-Appellant,

        v.

LELAND DUDEK, Acting
Commissioner of Social Security,[1]

    Defendant-Appellee.

No. 21-cv-00264

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Corinne Bunetto appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's application for disability benefits. Because the Administrative Law Judge adequately supported its decision, Plaintiff's appeal fails and the Commissioner's decision is affirmed.

## I.    BACKGROUND

Plaintiff alleges disability from lymphedema of her legs and substantial psychiatric and emotional disorders. (Dkt. 15 at 2–3.) Plaintiff contends that she has been disabled since early 2018. (*Id.*)

Plaintiff applied for disability, disability insurance benefits, and supplemental security income in March 2018; these claims were administratively denied. (Dkt. 9-1

---

[1] Acting Commissioner Dudek is automatically substituted as Defendant-Appellee by operation of Rule 25(d) of the Federal Rules of Civil Procedure.

at 21.) Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (*Id.*) The ALJ held that Plaintiff was not disabled. (*Id.* at 21.) The SSA Appeals Council denied Plaintiff's request for review, which rendered the ALJ's decision the Commissioner's final decision (*Id.* at 7). Plaintiff now seeks judicial review of that decision under 42 U.S.C. § 405(g). (Dkt. 12.) Plaintiff argues, in essence, that the ALJ's assessment was defective in that it was unsupported by substantial evidence. (Dkt. 15 at 6–7.)

As the ALJ determined, Plaintiff suffers from the following severe impairments: "venous insufficiency of the lower extremities; bipolar disorder with psychotic features; depression; post-traumatic stress disorder; anxiety; polysubstance abuse disorder." (Dkt. 9-1 at 23.) The ALJ found that Plaintiff, despite those impairments, has the residual functional capacity (RFC) to perform light work with certain limitations. (*Id.* at 25.) And because Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ held that Plaintiff was not disabled. (*Id.* at 30.)

## II.    STANDARD OF REVIEW

A claimant can petition a federal court for judicial review of a final decision by the Commissioner under 42 U.S.C. § 405(g). A federal court will uphold the decision so long as it is supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A reviewing court "will not reweigh

the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 900; *see also Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

In sum, an ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion," so that a reviewing court "may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (internal citation omitted).

## III. DISCUSSION

Plaintiff argues that the ALJ's RFC determination that Plaintiff could perform light work with certain limitations, (Dkt. 9-1 at 25), "falls short of accommodating claimant's physical and mental limitations." (Dkt. 15 at 6.) Plaintiff argues that the ALJ came to this conclusion "[w]ithout any support or explanation." (*Id.*) Attempting to prove that allegation, Plaintiff identifies in her brief numerous passages in the ALJ's decision that, Plaintiff contends, lack sufficient evidentiary support. In the ALJ's decision, these passages are generally divided between discussion of Plaintiff's medical impairments and her psychological impairments. Contrary to Plaintiff's conclusion, the ALJ sufficiently supported the decision with substantial evidence, building the necessary "logical bridge" between the evidence and the decision as required for meaningful judicial review. *Scott*, 297 F.3d at 595.

Plaintiff's arguments are addressed in turn, but a brief comment is required concerning the analysis that follows. Much of Plaintiff's argument centers on the ALJ's refusal to credit portions of Plaintiff's own testimony, or the testimony of other

witnesses, at the hearing. (*See, e.g.*, Dkt. 15 at 12 (noting "[t]he ALJ's undermining of Plaintiff's claims of limitation")). Although credibility determinations are ordinarily not disturbed on review of an ALJ's findings, *see Gedatus*, 994 F.3d at 900, they must not run counter to "objective factors or fundamental implausibilities." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). Each time the ALJ here discounted a witness's credibility or persuasiveness, the ALJ cited to a fact in the record to support that determination. (*See, e.g.*, Dkt. 9-1 at 24 (noting that Plaintiff's "allegations that she cannot even care for herself while living alone" are inconsistent with Plaintiff's "demonstrated abilities" including providing childcare and solo plane travel).) Because the ALJ's credibility determinations for Plaintiff and other witnesses are not contrary to record facts or "fundamental implausibilities," the Court will not second-guess them. *Taylor*, 425 F.3d at 354.

## A.    Medical Impairments

The ALJ concluded that despite physical impairments, Plaintiff has the RFC to perform light work with certain limitations. (Dkt. 9-1 at 25.) Plaintiff first argues that the ALJ "essentially dismissed deficits" stemming from Plaintiff's physical limitations, namely, venous insufficiency of both legs. (Dkt. 15 at 7.) The Commissioner argues that the ALJ's determination properly considered the evidence in the record. (*See* Dkt. 20 at 2.)

Plaintiff contends at the outset that the ALJ mischaracterized Plaintiff's leg impairment as "venous insufficiency of the lower extremities" (Dkt. 9-1 at 23), rather than Plaintiff's preferred diagnosis of lymphedema. (*See* Dkt. 15 at 7.) But the Record

4

indicates that Plaintiff was told by a vascular surgeon that "lymphedema was a wrong [diagnosis]" and instead the correct diagnosis was "Venous insufficiency." (Dkt. 9-1 at 946.) And a "Final result" following an ultrasound was "Lower Ext Bilateral Vein for Insufficiency." (Dkt. 9-2 at 1092.) The ALJ's labeling of Plaintiff's leg impairment was therefore supported by substantial evidence; in any event, Plaintiff does not explain how a diagnosis of lymphedema would or should have changed the RFC determination.

Plaintiff next argues that the ALJ's "undermining of Claimant's deficits" relied on numerous other "mischaracterizations and flawed inferences." (Dkt. 15 at 8.) One such mischaracterization, according to Plaintiff, concerns an issue regarding Plaintiff's compliance with medical treatment. As the ALJ stated, Plaintiff "was referred to physical therapy due to lower extremity edema, but she was noncompliant and was discharged." (Dkt. 9-1 at 27.) Plaintiff argues that Plaintiff's course of physical therapy ended for lack of progress rather than noncompliance. (Dkt. 15 at 8.) The ALJ cited to the physical therapy discharge note in the Record, which reflects that Plaintiff received seven treatments but missed four. (Dkt. 9-2 at 100.) To be sure, the note also indicates a "lack of progress" (*Id.* at 101); given the ALJ's consideration of other evidence of Plaintiff's noncompliance, however, the ALJ's statement cannot be said to be unsupported by the record. (*See* Dkt. 9-1 at 26–27 (discussing intermittent compliance with taking prescribed medications).)

Plaintiff also argues that the ALJ "relied upon an absence of documentation of significant or consistent deficits in Plaintiff's gait to undermine deficits arising out of

her lymphedema." (Dkt. 15 at 8.) The ALJ did note such an absence, but also cited several doctor's visits indicating no "Gait disturbance." (*See* Dkt. 9-1 at 27 (citing Dkt. 9-1 at 779, 785, 788, 795).) The ALJ also noted that Plaintiff had received venous radiofrequency ablation "to good effect." (*Id.*) Plaintiff then identifies portions of her own testimony alleging pain and difficulty walking to prove the inaccuracy of the ALJ's conclusion. (Dkt. 15 at 8–9.) But this argument concerns the weighing of evidence before the ALJ, a task this Court cannot undertake. *See Gedatus*, 994 F.3d at 900. The record contains substantial evidence supporting a conclusion that Plaintiff's gait is consistent with that required for light work; most of the record evidence to the contrary comes from Plaintiff's own testimony. The ALJ's gait analysis therefore reflected appropriate consideration of the evidence.

In sum, the ALJ built an adequate logical bridge between the evidence and the decision on Plaintiff's physical impairments and sufficiently rooted that decision in substantial evidence.

## B.    Mental Impairments

The ALJ's consideration of Plaintiff's mental impairments is similarly adequate. Plaintiff again argues that the ALJ improperly discounted Plaintiff's testimony about her own limitations. As with the physical impairments, however, substantial evidence in the record exists to support the ALJ's discounting of Plaintiff's testimony.

One argument that Plaintiff does not root solely in Plaintiff's own testimony concerns the ALJ's conclusion that Plaintiff's concentration and attention were

routinely within normal limits. (Dkt. 9-1 at 24.) Plaintiff correctly points out that the record includes numerous medical notes indicating an impairment of attention and/or concentration. (*See, e.g.*, 9-1 at 947, 950; 9-2 at 4, 7.) But these notes often also relate average eye contact, cooperative attitude toward examiner, clear speech, logical thought process, normal perception, normal judgment, and more. (*Id.*) Of note, the record also contains—and the ALJ cites—evidence of normal attention and concentration. (*See* Dkt. 9-2 at 276 ("Normal attention span and concentration.").) The ALJ also credited the impartial psychological medical expert's testimony stating Plaintiff's "mental status examinations are mostly within normal limits." (Dkt. 9-1 at 26.) Finally, the ALJ did not conclude that Plaintiff's concentration and attention were within normal limits. On the contrary, the ALJ determined that Plaintiff was moderately limited in this area. (*Id.*)

Plaintiff argues that "there is no reason to doubt [Plaintiff's] testimony" regarding Plaintiff's limited capabilities resulting from her psychological and emotional impairments. (Dkt. 15 at 12.) But there is. One notable example involves Plaintiff's ability to adapt and maintain herself. The ALJ notes that Plaintiff and Plaintiff's daughter testified that Plaintiff "stays in bed all day due to depression and anxiety" and that Plaintiff's children helped Plaintiff with "basic functions like personal hygiene." (Dkt. 9-1 at 24.) But the ALJ found those inconsistent with Plaintiff's "demonstrated abilities." (*Id.*) The ALJ noted that Plaintiff provided childcare and traveled by plane, alone, to Florida. (*Id.*) Given these facts in evidence, the ALJ determined that "[a]s for adapting or managing oneself, [Plaintiff's] has

7

experienced a moderate limitation." (*Id.*) This determination is supported by substantial evidence.

### C. Impairments Combined

Plaintiff contends that the ALJ failed to consider the combination of Plaintiff's mental and physical impairments together. (Dkt. 21 at 3.) But the ALJ determined an RFC that incorporates both mental and physical deficiencies. Specifically, the ALJ found that Plaintiff has the

> residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; she can tolerate occasional exposure to and occasionally work around vibration and hazards such as moving machinery or unprotected heights; she can perform simple routine tasks requiring no more than short, simple instructions and simple work related decision making, with few work place changes; she can maintain occasional contact with the general public of a brief, superficial and incidental nature and occasional interaction with supervisors and co-workers; she can work in proximity to others, but with no shared or so-called tandem tasks; she cannot perform fast paced-work, conveyor belt work, or jobs with strict production quotas, but she can meet end of the day production goals.

(Dkt. 9-1 at 25.) This RFC, with accompanying limitations, establishes that the ALJ considered both Plaintiff's physical as well as mental limitations.

The main evidence Plaintiff invokes regarding the combination of her impairments is a document produced by Plaintiff's counselor, Nancy Bowden, LPC. (Dkt. 9-2 at 170–72.) Plaintiff argues that Ms. Bowden "opined that, because of her combined mental and physical impairments, [Plaintiff] has marked limitation in her ability to sustain concentration and attention, resulting in frequent failure to complete tasks." (Dkt. 15 at 13.) In Ms. Bowden's note, she answers "no" to whether Plaintiff could "function in a competitive work setting," but when answering the

8

prompt "Other comments, if any, regarding your client's behavior as it impacts upon the ability to perform sustained work:" Ms. Bowden writes "Currently client can't work for physical reasons . . . Pain." (Dkt. 9-2 at 172.) The ALJ found Ms. Bowden, a counselor employed to aid Plaintiff with *mental and emotional* impairments, not credible to opine on the impact of Plaintiff's *physical* impairments on her ability to work: "it is not clear that [Ms. Bowden] is qualified to assess the claimant's physical functioning." (Dkt. 9-1 at 28.) Plaintiff argues that the ALJ "mischaracterized" Ms. Bowden's statement (Dkt. 15 at 13), but the Court disagrees. This example further demonstrates the ALJ's appropriate consideration of a witness's credibility given the facts in the record.

Plaintiff also challenges the ALJ's consideration of Plaintiff's improvement following medical treatment. Specifically, the ALJ noted improvement following surgery on her legs; the ALJ also noted improvement in Plaintiff's mental and emotional impairments while medicated. (Dkt. 15 at 9, 14.) Plaintiff argues that "improvement does not suggest an ability to function at work." (*Id.* at 14.) Although it is true that an ALJ cannot rely solely on nebulous "improvement" to conclude that a Plaintiff is not disabled, *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("[s]imply because one is characterized as 'stable' or 'improving' does not necessarily mean that she is capable of doing light work[]"), the ALJ based her decision on far more evidence than claims of improvement alone. Moreover, the ALJ included substantial workplace limitations in her RFC assessment to account for Plaintiff's significant mental and emotional impairments.

## IV. CONCLUSION

For the reasons provided above, the Court finds that the ALJ's decision was sufficiently founded on substantial record evidence, and the ALJ built a logical bridge from that evidence to the decision. The ALJ was not required to credit all testimony, and this Court is not empowered to reweigh evidence or witness credibility so long as those determinations are, as they were here, rooted in the evidence. Accordingly, the Commissioner's decision is affirmed.

SO ORDERED in No. 21-cv-00264.

Date: March 17, 2025

JOHN F. KNESS
United States District Judge